UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA WILLIAMS,

        Petitioner,                        CASE NO. 08-CV-14313

v.                                        JUDGE PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

SUSAN DAVIS,

        Respondent.
_____/

## OPINION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

**I.    INTRODUCTION**

This is a habeas case filed by a state prisoner under 28 U.S.C. § 2254. On October 9, 2008, Michigan prisoner, Barbara Williams (Petitioner), filed this *pro se* Habeas Petition challenging her August 17, 2004 guilty-plea convictions of four counts of embezzlement and one count of obstruction of justice, which occurred in the Genesee County Circuit Court. She was sentenced on September 9, 2004, as an habitual offender, fourth offense, to concurrent prison terms of six years, four months to twenty years. Pursuant to the Michigan Department of Corrections's (MDOC) website, Petitioner is currently on parole and under the supervision of the MDOC's Outer District Parole Office in Detroit, Michigan. She was paroled on April 20, 2010. Her supervision discharge date is April 20, 2012.

In her pleadings, Petitioner raises the following five claims: (1) whether the trial court erred in denying her motion to withdraw her plea because there was no factual basis established for either offense to which she pleaded; (2) whether her four embezzlement convictions violated the double

jeopardy clause of the Fifth Amendment to the United States Constitution; (3) whether her sentencing guidelines were incorrectly scored and whether the sentence imposed exceeded the guidelines range without a statement of substantial and compelling reasons for the departure; (4) whether the Michigan Court of Appeals erred in finding her a caregiver under the embezzlement statute; and (5) whether the Michigan Supreme Court erred in remanding the case to the trial court for reinstatement of the trial court's order denying her motion to withdraw her guilty plea to obstruction of justice.

For the reasons set forth, the Court denies the Petition. The Court also declines to issue Petitioner a Certificate of Appealability.

## II.     BACKGROUND

This case arises from Petitioner's manipulation of her relationship with Juanita Kemp. Kemp, a seventy-eight-year-old woman, who had a history of mental illness, including paranoia and delusions, was left with a trust fund after the death of her husband. Petitioner befriended Kemp and embezzled money from her. She also attempted to persuade Kemp to urge the prosecution to dismiss the embezzlement charges brought against her. The embezzlement charges dated from 2000 to 2003.

The obstruction of justice charge was based upon a letter Petitioner sent to Kemp asking that she not pursue the charges. The letter had been sent from jail with another inmate's return address to avoid detection by authorities. Kemp had independently informed the police originally that she did not want to proceed. Kemp died on March 30, 2004. Additional facts in this case are as follows.

In 1999, Kemp placed an ad in the Flint Journal, soliciting assistance for yard work. Petitioner answered the ad. Petitioner began befriending Kemp by taking her to lunch, talking with her about the Catholic Church, and bringing her gifts. Petitioner took advantage of Kemp's limited

2

mental capacity by making up stories so that Kemp would give her money. She told her that her son was having surgery and needed money. She also told her that her daughter died and that she needed money for the funeral. Both stories were fictitious.

There was no dispute that approximately $863,000 had been transferred from Kemp's trust fund into a checking account. Kemp would then write checks to herself and give the cash to Petitioner, at her request. Petitioner also convinced Kemp to mortgage her home on four different occasions.

The relationship between the two women was discussed at length in establishing a factual basis for Petitioner's plea. Plea Hr'g Tr. 10-29 Aug. 17, 2004. Petitioner denied being a caregiver, denied helping Kemp manage her money, or being employed by Kemp in any capacity. *Id.* at 17-18. Rather, she said she took her shopping and sometimes drove her around to do some errands. *Id.* at 18. She said she did those things because of a "relationship of trust" that existed between them. *Id.* Petitioner said she was not paid for her assistance. *Id.* at 19.

When Kemp was interviewed by the investigators, she told them that Petitioner did yard work for her about two or three times. She also told them that Petitioner told her that she did not want the checks written directly to her. Rather, she only wanted cash.

When the investigators conducted a trash pull at Petitioner's residence, they found some bank records, indicating that Kemp's house had been refinanced and the money given to Petitioner, as well as a manufactured false funeral announcement of her twelve-year-old daughter.

At the sentencing hearing, Kemp's nephew, Russell Savat, testified that Kemp treated Petitioner "like she was the daughter that she never had." Sentence Hr'g Tr. 29 Sept. 9, 2004. He said they called each other mother and daughter. *Id.*

Following her guilty-plea convictions, Petitioner was sentenced to the terms described above. She then filed a Motion for Reconsideration of Sentence, which was denied on November 2, 2005.

Subsequently, Petitioner filed an Application for Leave to Appeal with the Michigan Court of Appeals, raising what now form her habeas claims. The Court of Appeals denied the Application. *People v. Williams*, No. 266523 (Mich.Ct.App. Jan. 18, 2006). Petitioner then filed an Application for Leave to Appeal with the Michigan Supreme Court. In lieu of granting leave to appeal, the Supreme Court remanded the case back to the Court of Appeals and ordered it to review the claims. *People v. Williams*, 475 Mich. 910, 717 N.W.2d 338 (2006) (Weaver, J., would deny leave to appeal and would not remand this case to the Court of Appeals, because the trial court made sufficient factual findings; Corrigan, J., would deny leave to appeal.).

On January 22, 2008, the Court of Appeals issued an unpublished Opinion addressing each of Petitioner's claims. *People v. Williams*, 271870, 2008 WL 183088 (Mich.Ct.App. Jan. 22, 2008). The Court of Appeals granted Petitioner relief with respect to her claim that there was an insufficient factual basis to accept her guilty plea to the charge of obstruction of justice, but it denied relief with respect to the remaining claims. *Id.* at *1, 3, 7. Both parties then filed Applications for Leave to Appeal with the Michigan Supreme Court. The Supreme Court reversed the Court of Appeals's decision with respect to the obstruction of justice claim and denied Petitioner relief with respect to the other claims. *People v. Williams*, 481 Mich. 942, 751 N.W.2d 42 (2008) (Cavanagh and Kelly, JJ., would grant leave to appeal).

Petitioner neither filed a Motion for Relief from Judgment with the state trial court nor a Petition for Writ of Certiorari with the United States Supreme Court. Rather, she filed this Habeas Petition. Respondent filed an Answer, arguing that the Petition should be denied because

4

Petitioner's second claim, her double-jeopardy claim, lacks merit, and her remaining claims assert errors of state law which are noncognizable in federal habeas review.

### III.  ANALYSIS

#### A.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed this Petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002) (same). "[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle

5

to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *Williams*, 529 U.S. at 409.

In *Harrington v. Richter*, --- U.S. ---, ---, 131 S.Ct. 770, 786-87 (2011) (citations omitted), the United States Supreme Court held:

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."
>
> * * *
>
> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Additionally, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, ---, 131 S.Ct. 1388, 1398 (2011).

6

B.  **Petitioner's Claims**

1.  **Factual Basis for Petitioner's Plea–Claim I**

In her first habeas claim, Petitioner asserts that she is entitled to habeas relief because the trial court erred when it denied her Motion to Withdraw Plea as there was no factual basis established for either offense to which she pleaded guilty.

To the extent that Petitioner argues that the trial court erred by not establishing a proper factual basis for her plea, Petitioner has failed to raise a cognizable habeas claim. A state court is not required under the Constitution to establish a factual basis for a guilty plea. *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975). "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989). "An individual accused of [a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37 (1970). "The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citing *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993)). Therefore,

> when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*Broce*, 488 U.S. at 569; *see also Bonior v. Conerly*, 416 F.App'x 475, 478 (6th Cir. 2010) ("We have held that "there is no constitutional requirement that a trial judge inquire into the factual basis of a

plea," [], and more recently noted that "[t]he requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes," [].) (quoting *Roddy*, 516 F.2d at 1385); *Post v. Bradshaw*, 621 F.3d 406, 427 (6th Cir. 2010) (same).

The Court finds that Petitioner's challenge to the factual basis for her plea is not cognizable on habeas corpus review.

At the plea hearing, Petitioner was represented by counsel, and the record indicates that her plea was voluntary, knowing, and intelligent.

> THE COURT: Did you hear the plea – Well, did you hear what was stated here on the record by Mr. Mayes and by your attorney, Mr. Zimmer?
>
> [PETITIONER]: Yes.
>
> THE COURT: Did you understand what they said, ma'am?
>
> [PETITIONER]: Yes.
>
> THE COURT: Do you agree with it?
>
> [PETITIONER]: Yes.
>
> * * *
>
> THE COURT: Now, are you stating then that the plea that you are making here today is freely, understandingly and voluntarily made and that there's been no undue influence, compulsion or duress used against you to force you to plead guilty; is that true?
>
> [PETITIONER]: Yes.

Plea Hr'g Tr. 5, 11 Aug. 17, 2004.

Petitioner's argument that her plea failed to show that she was in a "relationship of trust" with Kemp also fails. The Court of Appeals, in addressing this claim, stated:

8

>At the time the offenses were committed, the crime as charged required proof that defendant obtained money from a vulnerable adult by violating "a relationship of trust" with that person. A person is in a relationship of trust if she "is a caregiver, relative, . . . household member, court-appointed fiduciary, or other person who is entrusted with or has assumed responsibility for the management of the vulnerable adult's money or property." The statute defines a "[v]ulnerable adult" to mean "an individual ... who, because of age, developmental disability, mental illness, or disability, whether or not determined by a court to be an incapacitated individual in need of protection, lacks the cognitive skills required to manage his or her property."

*Williams*, 2008 WL 183088, at *2.

At the plea proceeding, Petitioner admitted that she befriended Kemp after answering a help-wanted advertisement. Initially, Kemp intended to hire her to perform lawn-care services. However, that did not occur. Rather, Kemp relied on Petitioner to hire a lawn-care service on her behalf. Additionally, Petitioner admitted that she assisted in Kemp's care by acting as her chauffeur. Kemp, who was either unable or unwilling to drive an automobile, was permitted to address her needs only because of Petitioner's assistance. Thus, Petitioner provided a sufficient factual basis to establish she was a caregiver. She admitted that she took money from "a vulnerable adult and whom [she was] involved in a relationship of trust with." Plea Hr'g Tr. 5, 14-15 Aug. 17, 2004.

Regarding the obstruction of justice charge, Petitioner also admitted at the plea hearing that she sent a handwritten note to Kemp asking her to drop the charges. Plea Hr'g Tr. 5, 15-17 Aug. 17, 2004. The record shows that Petitioner sent a series of letters to Kemp telling her that she would not receive her money if the charges were not dropped. In one letter, she wrote, "I can never pay you back if I'm in here, you know . . . Don't let anyone know I wrote you, okay?" Preliminary Examination Hr'g Tr. 135-36 Apr. 15, 2004. From the record, it is clear that Petitioner would not be returning the money if Kemp did not drop the charges.

9

The Court concludes that Petitioner's claim that the trial court failed to establish a sufficient factual basis to support her guilty plea does not provide a basis for federal habeas relief because there is no federal constitution requirement that a factual basis supporting a guilty plea be established, so long as the plea is intelligently and voluntarily made. *See Holtgreive v. Curtis*, 174 F.Supp.2d 572, 583 (E.D. Mich. 2001). Petitioner is not entitled to habeas relief with respect to this claim.

2. **Double Jeopardy–Claim II**

Petitioner next alleges that her multiple sentences for the multiple counts of embezzlement violate her rights under the Double Jeopardy Clause.

The Double Jeopardy Clause of the Fifth Amendment provides that a person may not "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V; *see also North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (same). This clause affords defendants protection against three basic harms: second prosecution for the same offense after acquittal, second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (citations omitted). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (internal citations omitted). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

In determining whether the legislature has intended to authorize cumulative punishments, the habeas court is "bound by a state court's determination of the legislature's intent." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

The Michigan Court of Appeals, in addressing and rejecting this claim, stated:

> The protection against multiple punishments for the same offense "is to protect the defendant from having more punishment imposed than the Legislature intended." It is a restriction on a court's ability to impose punishment in excess of that intended by the Legislature."
>
> * * *
>
> The Legislature did express a clear intent that multiple punishments be imposed. MCL 750.174a(6) uses the term "may" with respect to the decision to aggregate. The term "may" "is permissive and therefore indicative of discretion, *In re Forfeiture of Bail Bond*, 276 Mich.App 482, 492; 740 NW2d 734 (2007). This grant of discretion plainly expresses the Legislature's intent to permit multiple punishments under the facts presented here. The prosecution may consider numerous acts committed in pursuit of a single scheme as a single offense, but it is not required to do so. Moreover, the prosecution must prove distinct facts for each count charged. Specifically, the amounts involved and the time frames at issue in each count are distinct and independent of each other. For this reason, we conclude the act of charging defendant with four counts of embezzlement is constitutionally permissible and consistent with *Smith, supra*.

*Williams*, 2008 WL 183088, at *4-5 (some citations omitted).

That finding by the Court of Appeals forecloses habeas relief because it determined that the Michigan Legislature intended to punish a person who commits multiple counts of embezzlement against a single victim multiple times. Once it is determined that the Legislature intended multiple punishments, then it is not objectively unreasonable for the state courts to reject the claim. The state courts' determination that the Legislature intended cumulative punishments is binding on a federal habeas court. *See Banner*, 886 F.2d at 780; *see also Albernaz v. United States*, 450 U.S. 333, 344

11

(1981) (the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed).

The Court's inquiry is therefore at an end. Petitioner's punishments for the multiple counts of embezzlement do not violate the Double Jeopardy Clause. Habeas relief is not warranted.

### 3. Sentencing–Claim III

In her sentencing claim, Petitioner first alleges that the trial court incorrectly scored the sentencing guidelines. Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F.Supp.2d 741, 745 (E.D. Mich. 2001). Petitioner makes no such allegation.

Petitioner's claims that the trial court erred in scoring Prior Record Variable (PRV) 6 and 7, and Offense Variable (OV) 13 under the state sentencing guidelines is not cognizable on federal habeas review because it is basically a state law claim. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003); *Robinson v. Stegall*, 157 F.Supp.2d 802, 823 (E.D. Mich. 2001). Any error in scoring the offense variables and determining the guidelines range does not merit habeas relief. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. Habeas relief does not lie for perceived errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (same); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987) (same).

The Court of Appeals determined that, even assuming that PRV 6 was improperly scored, PRV 7 and OV 13 were properly scored. *See Williams*, 2008 WL 183088 at *6-7. The Court finds

that decision is reasonable and is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Habeas relief is not warranted.

Petitioner also alleges that the trial court lacked substantial and compelling reasons for exceeding the sentencing guidelines range. According to Petitioner, the trial court sentenced her on the basis of her prior record and the court's subjective conclusions without giving appropriate weight to the offender and the current offense.

In Michigan, a trial court may depart from the sentencing guidelines if the court has "a substantial and compelling reason" for doing so and states the reasons for departure on the record. Mich. Comp. Laws § 769.34(3). As the Michigan Supreme Court has interpreted this requirement:

> [T]he reasons relied on must be objective and verifiable. They must be of considerable worth in determining the length of the sentence and should keenly or irresistibly grab the court's attention. Substantial and compelling reasons for departure exist only in exceptional cases. "In determining whether a sufficient basis exists to justify a departure, the principle of proportionality . . . defines the standard against which the allegedly substantial and compelling reasons in support of departure are to be assessed." For a departure to be justified, the minimum sentence imposed must be proportionate to the defendant's conduct and prior criminal history.

*People v. Smith*, 482 Mich. 292, 299-300, 754 N.W.2d 284, 290 (2008) (footnotes omitted).

The alleged violation of these principles and of Michigan Compiled Laws § 769.34(3) is not a basis for relief, because a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68 (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions ." *Id.* at 67-68.

The trial court offered the following reasons for the sentencing: Petitioner's nine prior felony convictions; Petitioner engaged in a relationship with Kemp which she used to her advantage;

13

Petitioner took approximately $600,000 from Kemp's trust account; Kemp mortgaged her home on four different occasions totaling over $200,000, which was given to Petitioner based on claims that her son needed money for surgery and that her daughter had died and she needed money for the funeral and other personal things. Although the judge said that a sentence at the high end of guidelines would be justified, the judge nonetheless sentenced Petitioner within the guidelines range. Sentence Hr'g Tr. 39 Sept. 9, 2004.

Furthermore, to the extent Petitioner argues an Eighth Amendment claim, "[t]he Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (Kennedy, J., concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288, 303 (1983)). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).

To the extent that Petitioner has asserted a constitutional claim, her claim lacks merit because her sentence was not grossly disproportionate to the crime or to the offender. Therefore, she is not entitled to habeas relief with respect to her sentencing claims.

4.      **Remaining Claims–Claim IV and V**

In her fourth habeas claim, Petitioner alleges that the Court of Appeals incorrectly found that she was Kemp's caregiver under Michigan's statute defining embezzlement and vulnerable adult.

In her fifth habeas claim, Petitioner alleges that the Michigan Supreme Court erred in reversing the Court of Appeals's decision regarding whether there was a sufficient factual support for her guilty-plea conviction of obstruction of justice under Michigan's definition of such.

As stated, habeas relief may not be premised on a perceived error of state law. *Estelle*, 502 U.S. at 67-68. This Court should not contradict the statutory interpretation of the Court of Appeals or the Supreme Court, unless such interpretation was itself "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Because the interpretation of the state appellate courts do not contradict clearly established federal law, that interpretation controls here. Petitioner is not entitled to habeas relief with respect to these claims. *See also* section III, B-1, *supra*.

## IV. CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained her Petition and that the Petition for a Writ of Habeas Corpus must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed.R.App.P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that [] jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.

Having conducted the requisite review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to her habeas claims. A Certificate of Appealability is not warranted.

Accordingly;

IT IS ORDERED that the Petition for a Writ of Habeas Corpus is DENIED and DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Court DECLINES to issue Petitioner a Certificate of Appealability.

IT IS SO ORDERED.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

DATED: 1-30-12